UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE E. LANIER, SR.,

      Plaintiff,

v.                                         Case No. 11-14780
                                          Honorable Victoria A. Roberts

SYNCREON HOLDINGS, LTD.,
BRIAN ENRIGHT, and, JOHN AND
JANE DOES,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND COUNT I**

**I.      INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 10). Defendants ask the Court to dismiss Counts II, III, and IV of the Amended Complaint based on a forum selection clause for Ireland. Defendants say Count I must be dismissed for failure to plead fraud with particularity. Defendants' Motion to Dismiss is **GRANTED**.

**II.     BACKGROUND**

This action concerns Plaintiff's rights with respect to certain stock options issued to him as part of compensation for serving as Director and CEO of Syncreon.US, Inc. ("Syncreon US"), as well as an alleged scheme by Defendants to defraud him of the value of his investments in Syncreon US and to force his resignation. The options were granted to Mr. Lanier pursuant to Syncreon's 2007 Long Term Incentive Plan (the

1

"Plan"). Syncreon US is an entity related to and partially owned by Syncreon Holdings, LTD ("Syncreon"), an Irish corporation. Defendant Enright is an Irish citizen and Director and CEO of Syncreon. Enright served as Administrator of the Plan; he was responsible for its execution and administration.

Plaintiff's theory of the case changed between the filing of his initial Complaint on October 28, 2011 and the filing of his Amended Complaint on January 20, 2012. Plaintiff's initial Complaint alleged two grounds for relief: (1) declaratory judgment that Plaintiff retained certain stock option contracts, and that Syncreon did not have the contractual power to unilaterally seize those options; and (2) Defendant Enright breached his fiduciary duty while serving as Administrator of the Plan by seizing the option contracts from Plaintiff without contractual authority to do so. The claims were entirely contractual in nature, as Plaintiff himself admitted: "The treatment of the Options -- and Mr. Lanier's and Syncreon's rights with respect to the Options -- is governed by the Plan" (Compl. ¶ 24).

The controversy arose out of Syncreon's attempt to buy back Plaintiff's option contracts. After several attempts to induce Plaintiff to voluntarily sell his options, and Plaintiff's refusal to do so, Syncreon purported to unilaterally purchase them. Syncreon wired the amount of $347,755.59 to Mr. Lanier as payment in full for his option contracts. Mr. Lanier, acting through counsel, denied that Syncreon had the authority to unilaterally purchase the options, and wired the money back to Syncreon.

According to the initial Complaint, the dispute turned on whether the Plan authorized Syncreon to unilaterally purchase the shares. Plaintiff said the Plan only

2

authorized a voluntary buyout; that is, Plaintiff's consent was required.  In support, Plaintiff pointed to two provisions of the Plan:  ¶ 4(b)(vi) allows the administrator "to determine whether to offer to buyout a previously granted Option . . ."; and ¶ 10(j), under the subheading "Buyout Provisions," states that "[t]he Administrator may at any time offer to buyout for a payment in cash or Shares, an Option previously granted . . . ."  The operative word in these provisions, according to Plaintiff, is "offer"; the administrator may make an offer, but the owner is under no obligation to accept.

The Complaint also states that Defendants relied upon a separate provision of the Plan, ¶ 14(a), to justify their repurchase of the shares.  That section provides that if certain identified events occur which, "in the Administrator's sole discretion," dilute the benefits made available under the Plan, the Administrator may, among other things, purchase options for an amount of cash "equal to the amount that could have been obtained upon the exercise of such Option . . . ."  Attached to the Complaint is letter correspondence in which Defendants state that a transfer of shares between one group of Syncreon shareholders and another served as a triggering event which allowed Syncreon to unilaterally purchase Plaintiff's options under ¶ 14(a).

Thus, the main issue posed by the initial Complaint was whether a triggering event had occurred under the Plan which authorized Syncreon and the Administrator to repurchase Plaintiff's options.  Resolution of the two causes of action necessarily depended upon a reading of the Plan itself.

On December 29, 2011 Defendants filed a Motion to Dismiss (Doc. 5). Defendants argue that the Plan, which formed the entire basis of the Complaint,

contained a mandatory forum selection clause requiring the case to be brought in Ireland. On January 20, 2012 Plaintiff filed an Amended Complaint as a matter of course (Doc. 6).

The Amended Complaint significantly broadens the allegations of the initial Complaint. Most notably, Plaintiff re-frames his allegations to sound in fraud rather than contract (Am. Compl. ¶ 1 ("This is an action for two instances of fraud that both arise from Plaintiff's association with Defendants.")). The first alleged instance of fraud (Count I) states that Defendants used Plaintiff as a figurehead, exploiting his status as an African-American so that they could obtain benefits as the result of Syncreon.US's status as a Minority Business Enterprise ("MBE"). Then, when Plaintiff allegedly outlived his usefulness, Defendants intentionally rendered Syncreon.U.S. insolvent in order to force Plaintiff's resignation. The second alleged instance of fraud (Counts II-IV) involves Defendants' seizure of Plaintiff's stock options "with full knowledge that such unilateral seizure is not permitted by the Plan . . ." (*Id.* ¶ 3). This is the conduct that formed the basis of the initial Complaint.

The Amended Complaint states four causes of actions: (1) Fraud - that Defendants engaged in a pattern of misrepresentations and omissions regarding the true value of Syncreon US in order to force Plaintiff to enter into more debt with Syncreon Holdings or to resign; (2) Fraud - that Defendants fraudulently purported to force Plaintiff to redeem his options; (3) Declaratory Judgment that Plaintiff still retains the options and that Defendants do not have the power to unilaterally seize them; and (4) Breach of Fiduciary Duty - that Defendant Enright, as Administrator of the Plan,

breached his fiduciary duty by engaging in a self-serving, arbitrary, and bad-faith interpretation of the Plan.

On February 21, 2012 Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 10). Defendants argue that Plaintiff's attempt to recast his claims as fraud is merely "an effort to anchor his case in Michigan in the face of clear contractual language and legal authority which requires him to bring his claims in Ireland" (*Id.*, p. 1). Defendants say that Counts II, III, and IV arise directly from the Plan and can not be recast as fraud to avoid dismissal under the Plan's forum selection clause. Further, Defendants say Count I, which alleges a fraudulent scheme to force Plaintiff's resignation, must be dismissed for failing to plead fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.

## III. ANALYSIS

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the facial sufficiency of the complaint. "On a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). In order to survive a motion to dismiss, the factual allegations of the complaint must raise a right to relief above the speculative level so that the complaint is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In determining whether a complaint meets the plausibility standard, a court is allowed to draw reasonable inferences based on the facts pled. *Ashcroft v. Iqbal*, 556 U.S. 662

(2009).

Whether a motion to dismiss based on the existence of a valid forum selection clause is properly granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(3) for improper venue, or Rule 12(b)(6) for failure to state a claim has been a matter of confusion for federal courts. *See Heinz v. Grand Circle Tavel*, 329 F.Supp.2d 896, 899 n.6 (W.D. Ky. 2004) (collecting cases evidencing circuit split). Recently, in *Wong v. Partygaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009), the Sixth Circuit stated that "forum selection clause[s] should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue. (citing *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002)). In holding, the Sixth Circuit appeared to endorse the view that enforcement of a forum selection clause is a matter of contract that does not go to jurisdiction or venue. Accordingly, this Court evaluates Defendants' arguments regarding the Plan's forum selection clause under Rule 12(b)(6).

    **B.**    **Counts II, III, and IV Are Dismissed Pursuant to the Plan's Forum Selection Clause**

        **i.**    **Counts II, III, and IV are Governed by the Plan**

The Plan is at the heart of Counts II, III, and IV of the Amended Complaint. Count II, labeled Fraud, alleges that Defendants fraudulently purported to force the redemption of Plaintiff's options in violation of the Plan, which states that "such unilateral seizure through forced sale could not occur under the circumstances present" (Am. Comp. ¶¶ 137-38). Yet, the circumstances under which the Administrator may forcibly repurchase options granted under the Plan are set forth in ¶ 14 of the Plan.

Whether the circumstances which trigger the Administrator's repurchase rights are present here is a matter of contractual interpretation; Plaintiff cannot recast the claim as fraud to avoid the provisions of the contract. Count III is also contractual; it seeks a declaration that Plaintiff retains his options, and that Defendants do not have the right to unilaterally buy them back. Determining the rights of the parties with respect to the options is wholly dependent on the language of the Plan itself. Lastly, Count IV, titled Breach of Fiduciary duty, alleges that Defendant Enright, as Administrator, acted in a manner that was arbitrary and in bad faith with respect to the Plan. Yet, in order for the Court to make this determination, it will necessarily have to look to the Plan itself. Enright did not breach a fiduciary duty if he acted in a manner that was contemplated by the Plan.

"The law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *QQC, Inc. v. Hewlett-Packard Co.*, 258 F.Supp.2d 718, 721 (E.D. Mich. 2003) (quoting *Brock v. Consol. Biomed. Labs.,* 817 F.2d 24, 25 (6th Cir. 1987)) (collecting cases). This means that when the "operative allegations in [a] [p]laintiff's fraud claims would not exist in the absence of the contracts between the parties . . . such allegations cannot be maintained as tort-based claims under Michigan law." *Id.* (citing *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191-92 (6th Cir. 1994)). As explained above, Counts II-IV are premised on the Plan, and could not exist independently of the Plan. As such, they are subject to the forum selection clause contained in ¶ 22 of the Plan, which the Court turns to now.

      **ii.    The Plan Contains a Mandatory and Enforceable Forum Selection Clause**

The forum selection clause contained in the Plan presents two distinct issues: (1) what is the scope, or meaning, of the clause (i.e., is it mandatory or permissive)?; and (2) is the clause enforceable?  The Court addresses these questions in turn.  Further complicating the analysis, though, the Court must decide which law -- state, federal, or the law chosen by the contract itself -- applies to each step.  Naturally, Defendants say that the clause is both mandatory and enforceable, and that it therefore requires that Counts II-IV be dismissed.  Plaintiff says that the clause is neither mandatory nor enforceable.

The clause states:

> 22.     Governing Law and Jurisdiction.  The validity and enforceability of this Plan shall be governed by and construed in accordance with the laws of Ireland and the courts or [sic] Ireland shall have jurisdiction to hear and determine any suit, action or proceedings that may arise out of or in connection with this Agreement and for such purposes irrevocably submits to the jurisdiction of such courts without regard to choice of laws or conflict of laws provisions thereof that would direct the applicable [sic] of the laws of any jurisdiction.

### 1.     The Substantive Meaning of the Clause

By its own terms the forum selection clause does not appear to be mandatory. The clause states that the "courts or [sic] Ireland shall have jurisdiction to hear and determine any suit . . . ."  It does not state that the courts of Ireland shall have *exclusive* jurisdiction; nor does it say that all other courts other than those of Ireland are divested of jurisdiction.  Applying ordinary principles of contractual interpretation, the clause is not mandatory; that is, it vests Irish courts with jurisdiction but does not preclude suit from being brought in a forum outside of Ireland.  Presumably, if the Court were to apply Michigan law or federal law to the interpretation of the forum selection clause, the

8

principles of ordinary contractual interpretation would prevail, and Defendants' motion would be denied. *See Grammar, Inc. v. Custom Foam Systems, Ltd.*, 482 F.Supp.2d 853, 859 n.7 (E.D. Mich 2007) (holding that a non-exclusive forum selection clause indicating that the parties consented to suit in Michigan and to the application of Michigan law did not bar suit in the courts of Ontario, Canada). The Court's analysis does not stop here though; Defendants say that the Court must apply Irish law to the interpretation of the forum selection clause.

The Sixth Circuit recently held that federal law applies to the *enforceability* of a forum selection. *Wong*, 589 F.3d at 828. But, the scope or meaning of the forum selection clause in *Wong* was not at issue. In fact, the court in *Wong* presupposes that the clause in question is mandatory. For example, *Wong* provides three factors for evaluating enforceability, but not one of those is whether the clause is mandatory or permissive. *See id.* The Court ordered supplemental briefing on whether meaning and scope of a forum selection clause is a separate and distinct inquiry from enforceability, and if so, whether *Wong* applies only to enforceability. The Court now holds that determining the meaning and scope of a forum selection clause is a separate substantive inquiry that is controlled by the law chosen in the contract itself -- in this case, Irish law.

The Court's holding is consistent with that of the circuit courts of appeals that have addressed the issue. In *Yavuz v. 61 MM, LTD*, 465 F.3d 418 (10th Cir. 2006), the Tenth Circuit addressed the exact issue confronted by this Court: is the forum selection clause mandatory or permissive, and what law does the court apply to make this

9

determination. The Tenth Circuit distinguished Supreme Court precedent which held that federal law applies in interpreting forum selection clauses on the ground that, in previous cases, "there was no question regarding the meaning of the contractual forum-selection provision at issue, only its enforceability." *Id.* at 430. The Court then stated:

> If the parties to an international contract agree on a forum-selection clause that has a particular meaning under the law of a specific jurisdiction, and the parties agree that the contract is to be interpreted under the law of that jurisdiction, then respect for the parties' autonomy and the demands of predictability in international transactions require courts to give effect to the meaning of the forum-selection clause under the chosen law, at least absent special circumstances (such as, perhaps, the chosen jurisdiction's refusal to hear a case that has no ties to the jurisdiction). In other words, just as the Supreme Court has made clear that under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision, we now hold that under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice-of-law provision. The practice, although apparently merely reflexive, of applying the law of the jurisdiction in which the suit is pending ( lex fori ), is unsatisfactory.
>
> *Id.* at 430-31 (internal citation omitted).

The Second Circuit suggested that it might be inclined to follow a similar approach to that taken by the Tenth Circuit in *Yavuz*. After discussing Supreme Court precedent holding that federal law applies to the enforceability of a forum selection clause, the Second Circuit stated, "We find less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause . . . ." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 385 (2d Cir. 2007). The court then said, "[W]e cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole." *Id.* at 386; *see also Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423

10

(7th Cir.2007) ( "Simplicity argues for determining the validity and meaning of a forum selection clause ... by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears.").

The Court does not believe that determining the *meaning* of a forum selection clause is a procedural rather than substantive matter. Most federal courts sitting in diversity apply federal common law to determine the enforceability of a forum selection clause because this inquiry implicates federal procedure. *See Wong*, 589 F.3d at 827. Determining the meaning of a clause, though, is a matter of contractual interpretation, not federal procedure. As such, the Court agrees with the above authority that the law of the contract should apply. At least one court in this district has reached the same conclusion. *Global Link, LLC v. Karamtech Co., Ltd.*, No. 06-14938, 2007 WL 1343684 (E.D. Mich. May 8, 2007) (holding that Korean law applies to interpretation of forum selection clause where the parties agreed that Korean law would govern the contract). Here, Irish law applies to determine the meaning of the forum selection clause.

Defendants say that under Irish Law, and applicable European Union ("EU") law, the clause is mandatory and exclusive. Defendants attach the Declaration of Irish solicitor Helen Noble in support. (Doc. 10, Defs. Mot. Dis., Ex. H) Ms. Noble concludes that under Irish law, the clause is mandatory:

> 9. Pursuant to Irish law, it is my opinion that the Irish Courts would hold that the disputed language in Section 22 of the Plan is governed by Article 23 of the Brussels I Regulation.
>
> 10. Article 23 of the Brussels I Regulation holds that there is a presumption that any clause conferring jurisdiction on the courts of one EU member state, such as Ireland, is exclusive unless the parties have expressly agreed otherwise.

> 11. The Plan contains no express agreement to the contrary, and under Irish and EU law, the forum selection clause conferring jurisdiction to Irish courts is presumed to be exclusive.

(*Id.*)

Defendants have not submitted any underlying case law upon which Ms. Noble relied in forming her opinion, but the Court reviewed the Brussels I Regulation and finds that Ms. Noble's opinion is in accord with the plain language of the text. Plaintiff has not submitted anything to contradict the declaration. The Court, therefore, holds that the forum selection clause contained in the Plan, interpreted under Irish law, provides that Ireland is the exclusive forum for the parties' dispute as to claims II-IV.

Having interpreted the meaning of the forum selection clause, the Court now turns to whether it is enforceable.

### 2. Enforceability

It is well-settled that "[a] forum selection clause in an international agreement should control absent a strong showing that it should be set aside." *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995). Such clauses are "prima facie valid" and should be enforced "absent some compelling and countervailing reason." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 12 (1972). The Sixth Circuit looks to three factors to evaluate the enforceability of a forum selection clause: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d and 828. The party opposing the

forum selection clause bears the burden to show that it should not be enforced. *Id.*

Under the first prong, the Sixth Circuit held that a forum selection clause was fraudulently induced "where the party seeking to enforce the clause had affirmatively represented that disputes would be resolved in a forum different from that dictated by the forum selection clause." *Id.* (citation omitted). The Sixth Circuit upheld a forum selection clause where the party opposing the clause "failed to offer any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the agreement." *Id.* (citation omitted). Plaintiff has not met his "heavy burden" on this factor. Plaintiff does not allege fraud in the inducement, but says that he did not have the opportunity to negotiate the contract, and was not on notice that Ireland was the exclusive forum. But, the Supreme Court held that a non-negotiated forum selection clause in a form contract can still be enforced, even if it is not the product of bargaining. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). This argument is especially unconvincing in light of the fact that Mr. Lanier is a highly sophisticated businessman who served as CEO of Syncreon US. Plaintiff also has not offered any evidence to show that he did not agree to the clause. He first says that he could not have known the clause was *exclusive*, and then, in his supplemental brief, he says that "there is nothing to suggest that he saw the terms of the Plan ahead of time." Plaintiff bears the burden to show that the clause should not be enforced; his argument, without evidence, that he did not knowingly and willingly consent is insufficient to overcome the presumption of validity.

Plaintiff does not argue that an Irish court would ineffectively or unfairly handle

the suit, so the Court turns to *Wong*'s third prong: whether the Irish forum is so inconvenient that it would be unjust or unreasonable to require Plaintiff to bring suit there. "The finding must be based on more than mere inconvenience of the party seeking to avoid the clause." *Wong*, 589 F.3d at 829. Moreover, the Sixth Circuit has held that "enforcement of a forum selection clause would not be unreasonable where the opposing party failed to produce any evidence that it was exploited or unfairly treated." *Id.* (citing *Siempelkamp v. GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994)).

Plaintiff says that this case lacks a nexus to Ireland. But, Syncreon is an Irish corporation, and Enright is an Irish citizen. With these facts, it is reasonable to conclude that Plaintiff, as a sophisticated and experienced businessman, was on notice that any litigation with Syncreon might be contractually required to take place in Ireland. Granted, it would be inconvenient for Plaintiff to bring this case in Ireland, but *Wong* makes clear that mere inconvenience is not enough to overcome the presumption of validity in a forum selection clause. *Wong*, 589 F.3d at 829.

In *Wong*, Ohio residents brought suit against a Gibralter-based company that hosted online poker games. To participate in the online poker games, the plaintiffs had to agree to the "Terms and Conditions of Use" on the defendant's website. One such term was that all suits be subject to the exclusive jurisdiction of the courts of Gibralter. In analyzing the third factor, the Sixth Circuit stated:

> In this case, plaintiffs are not sophisticated business entities with the ability to negotiate the forum, and continuing the suit in Gibraltar would no doubt be an inconvenience. Yet even with these considerations, plaintiffs have not carried their "heavy burden" of showing that enforcing this forum selection clause would be unjust or unreasonable. Aside from their claims that a Gibraltar forum forecloses the possibility of a jury trial or class-action suit, plaintiffs have failed to

show how litigating in Gibraltar would be such an inconvenient forum to yield it unjust or unreasonable. We therefore affirm the district court's conclusion that the forum selection clause is enforceable.

*Id.* at 829-30.

The Court does not see how it would be more inconvenient for Plaintiff to litigate this case in Ireland than it would have been for the online poker plaintiffs of *Wong* to litigate their case in Gibralter. Unlike the poker players, Mr. Lanier is a sophisticated businessman. Mr. Lanier worked as CEO of an American subsidiary to an Irish corporation. Under these facts, enforcement of the forum selection clause is neither unjust nor unreasonable.

For these reasons, Counts II-IV of the Amended Complaint are dismissed under Rule 12(b)(6).

### C. Count I is Dismissed for Failure to Plead Fraud with Particularity

Count I of the Amended Complaint alleges that Defendants committed fraud in order to force Plaintiff's resignation from Syncreon US. Paragraph 54 of the Amended Complaint summarizes those allegations:

> In sum, Defendants consciously and systematically engaged in a fraudulent and unconscionable pattern of misrepresentations, withholding of information, and other conduct collectively engineered to allow Defendants to exploit Syncreon.US's MBE status, funnel Syncreon.US's profits to themselves to the fullest extent possible, and defraud Mr. Lanier of the rights he properly had as a result of his position as Syncreon.US's Director, Chairman, CEO, and principal investor. In engaging in this pattern of fraudulent and unconscionable conduct, Defendants, among other things, denied the minority CEO (Mr. Lanier) the information and control that accompanies such a position, withheld information relating to the value of Syncreon.US, and, through their confiscatory action in willfully rendering Syncreon.US insolvent, precluded Mr. Lanier from realizing the true value of Syncreon.US.

(Doc. 6, Am. Comp., ¶ 54)

Federal Rule of Civil Procedure 9(b) requires that each element of a fraud claim be pled with particularity. The elements of fraud in Michigan are:

> (1) the defendant made a material misrepresentation; (2) that was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) the he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815-16 (Mich. 1976). In order to satisfy Rule 9(b), Plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

The allegations contained in Count I of the Amended Complaint do not meet the heightened pleading standard of Rule 9(b). The allegations of Count I are couched in conclusory terms that do not give Defendants fair notice of the accusations against them. Plaintiff says that Defendants engaged in a "pattern of intentional misrepresentation"; and that they engaged in an "ongoing pattern and practice of making material misrepresentations to Mr. Lanier that they knew or should have known to be false." None of the allegations under Count I is specific as to the precise statements alleged to be fraudulent, the particular speaker, the time and place the statements were made, and that Defendants knew the statements to be false. Generalized allegations are insufficient. Moreover, it is not the Court's job to parse the previous 121 paragraphs of the Amended Complaint to attempt to determine which allegations correspond to which element of a claim of fraud. The particularized information must be set forth clearly and succinctly under the heading of the cause of

16

action for fraud, not spread scattershot throughout 23 pages of generalized allegations.

For these reasons, Defendants' Motion to Dismiss is Granted as to Count I. Plaintiff has until Tuesday, September 4, 2012 to amend Count I to meet the pleading standard of Rule 9(b).

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss. Plaintiff may amend Count I by **Tuesday, September 4, 2012** to correct the deficiencies identified above.

A telephone status conference is set for **Thursday, September 6, 2012 at 4:00 pm**. Plaintiff's counsel must initiate the conference call. Defendants are not to file any responsive pleading before the telephone conference.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 14, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 14, 2012.

S/Linda Vertriest
Deputy Clerk